# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARTIN J. MURPHY and STAY
LAKE GENEVA, INC.,

            Plaintiffs,

v.

WALWORTH COUNTY,

            Defendant.

Case No. 18-CV-659-JPS

**ORDER**

      This action arises from a newly enacted ordinance in Walworth County that imposes various requirements on short-term rental properties. On April 25, 2018, plaintiffs Martin J. Murphy and his family's rental business, Stay Lake Geneva, Inc., (collectively, "Murphy") filed a complaint in this Court alleging that an ordinance enacted by defendant Walworth County ("the County") violated Murphy's Fourth and Fourteenth Amendment rights, and seeking declaratory and injunctive relief. (Docket #1). The parties each filed motions for summary judgment, and their motions are now fully briefed. For the reasons explained below, the Court will grant the County's motion for summary judgment, deny Murphy's motion for summary judgment, and dismiss the case.

1. **STANDARD OF REVIEW**

      Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under

the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The Court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the [C]ourt that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

2.   **RELEVANT FACTS**

   2.1   **The County's Short-Term Rental Regulations**

The County is home to many lakes and outdoor attractions, as well as a community of long-term residents. During the summer season, tourists flock to the region to enjoy Lake Geneva, Kettle Moraine State Forest, and the Alpine Valley Music Theater. There are many places for tourists to stay in the County including hotels, bed and breakfasts, and short-term rentals. The annual wave of tourists has both positive and negative effects for the residents who live there.

The last several years have seen the rise of short-term rental websites such as Airbnb and VRBO. As a result, short-term housing rentals have become a viable way for multi-property owners to make money by leasing their seasonal homes for brief periods of time. Short-term rentals are often found in residential zones and offer the temporary experience of living like

a local. The short-term rental phenomenon, which rides in tandem with summer tourism in the County, has positive and negative effects for the long-term residents in the community. On the one hand, tourism is a boon for the local economy. On the other hand, shorter term residents often have less of an interest in preserving the environment, or in respecting the communities that have been settled there for years. Long-term residents may welcome tourists in their commercial zones but find them annoying and un-bargained-for in residential areas.

In September 2017, the State of Wisconsin passed "Act 59," which sought to address the competing interests surrounding short-term rental properties. Act 59 prohibited local governments from outlawing short-term rentals—presumably because a property owner should be able to use his property as he sees fit, within reason and the law. In exchange, however, Act 59 allowed counties and municipalities to regulate short-term rentals through zoning and licenses.

In light of the new statutory framework, in late 2017, the County held a series of "vacation rental workshops" in order to address issues with short-term rentals that are often the subject of resident complaints. They discussed potential solutions for controlling problems such as excess noise, over-occupancy, and waste, and considered zoning regulations, licensing requirements, and taxes. Ultimately, zoning and licensing regulations were agreed upon. The goal of this approach, according to the County, was to allow short-term rentals while protecting the interests and quality of life for long-term residents.

Following this process, the County enacted various ordinances to counteract the negative externalities of tourism, including the one at issue, Ordinance No. 1099 ("the Ordinance"). The Ordinance dealt with various

concerns raised by the community, including over-occupancy and sanitation issues. The stated purpose of the Ordinance is to "ensure a short-term rental operating in a residential dwelling within Walworth County is adequate for protecting public health, safety and general welfare, including establishing minimum standards for human occupancy. . .[and] provid[ing] minimum standards necessary for the health and safety of persons occupying or using the buildings. . ." (Docket #24 at 6). The County goes on to explain that "purpose of the Ordinance was not to prohibit month-to-month or short-term lease agreements, but to address the concerns associated with short-term rentals, while complying with state law." (Docket #31 at 10).

The Ordinance applies only to short-term rental properties.[1] The contested provisions are Section 26-336, which limits the Ordinance's application to short-term rentals, and Section 26-342, which requires a guest registry. The parties discuss two other sections to illustrate the effect of the Ordinance: Section 26-338, which requires adequate sanitation facilities, and Section 26-339, which limits occupancy. The relevant policies are provided below.

> Sec. 26-336. Applicability. This article shall apply to all rentals of a Residential Dwelling as a Short-Term Rental as defined in Chapter 74 of the Walworth County Code of

---

[1]The County defines a "short-term rental" as a "residential dwelling offered or occupied for rent for a fee or similar consideration for more than six but fewer than 29 consecutive days; or a residential dwelling in the B-5 zone district offered or occupied for rent for a fee or similar consideration for fewer than 29 consecutive days. Short-term rental does not include bed and breakfast establishments." Walworth Cty. Code § 74-263. The "short-term rental" definitional time frame of 6-29 days mirrors the State's Act 59 permissions on regulating short-term rentals.

Ordinances...This article shall not apply to facilities approved as a hotel, motel, tourist court, rooming house, lodge, lodging house, or bed and breakfast as defined in Section 74-131 and 74-263 of the Walworth County Code of Ordinances.

Sec. 26-338. Sanitary facilities. Adequate sanitary facilities shall be provided. Cesspools and non-plumbing sanitary systems such as composting toilets, incinerating toilets, privies, and portable restrooms are prohibited. If the property is not served by public sanitary sewer, a Private Onsite Wastewater Treatment System (POWTS) in full compliance with this Article and in accordance with Chapter 70, Walworth County Code of Ordinances, and Wisconsin Administrative Code DSPS 383 must serve the property.

Sec. 26-339. Occupancy. If the property is served by public sanitary sewer, occupancy is limited to the number of occupants authorized by the State Tourist Rooming House License issued by the State of Wisconsin Department of Agriculture, Trade and Consumer Protection in accordance with Wisconsin Administrative Code ATCP 72. If the property is served by a POWTS, occupancy is limited to the number of occupants for which the POWTS was designed, or the occupancy granted by the State Tourist Rooming House, whichever is less.

Sec. 26-342. Guest Registry. Each license holder shall keep a registry of the party responsible for securing the rental including their name, address, phone number, dates of stay, and number of occupants in the party. The registry shall be made available upon request by the Department. The license holder shall maintain the above-stated information for a period of not less than one year from the last date of stay of the occupants.

Applications for the Walworth County Short-Term Rental Annual License require a site plan, floor plans, a list of property rules (*e.g.*, parking information, emergency contacts, quiet hours), the State Tourist Rooming House License, the name and pick-up schedule of the garbage hauler, and

evidence of adequate sanitary facilities (if the sanitation system is private), plus a $904.00 application fee which goes towards processing applications, reviewing plans, conducting inspections, monitoring, and enforcement.

After following the traditional legislative process and undergoing review by the County Corporation counsel, the County enacted the Ordinance on April 19, 2018. On September 4, 2018, the Board voted to remove the Ordinance's "guest registry" requirement, which had raised privacy concerns and apparently did not serve its purpose in limiting over-occupancy.

As of December 19, 2018, the County estimated that approximately 127-137 residentially-zoned homes were being operated as short-term rentals subject to the Ordinance. As the County learns about new rental properties, it works to bring them into compliance with the Ordinance.

### 2.2 Murphy's Short-Term Rental Business

In 1998, Murphy purchased a house located on lot W4110. He purchased a second house on the same lot in 2005. In 2006, he approached the County Zoning Department to inquire about renovating the houses. The Zoning Department told him that he would only be able to renovate one of the houses. Murphy decided to raise both houses and build one large, new summer home for his family. This construction was completed in 2008. It boasted six bedrooms, according to the zoning permit, an office, and ample space for hosting a large family gathering.

In 2012, the Murphy family moved into their summer home at W4110 permanently. In 2015, Murphy purchased a 50% interest in the neighboring plot, W4106. Lot W4106 sits east of W4110, and contains a house built in 2006 as a retreat for seminarians and as a short-term rental. Despite its status as a retreat house, it is zoned as a single-family home. The

W4106 house consists of two standard bedrooms and one dormitory-style bedroom with six beds and a pull-out couch. Although the W4106 house was licensed as having only 3 bedrooms, Murphy renovated the upper level dormitory with partitions so that it had five bedrooms. It is unclear when Murphy made these changes, or whether Murphy received permits pursuant to Section 70-2 of the Walworth County Code of Ordinance and Wisconsin Administrative Code Section 383.43.

In 2017, the Murphy family purchased a three-bedroom house and one-bedroom coach house on lot W4177 to use as an additional rental property. All properties that Murphy acquired—W4110, W4106, and W4177—were residentially zoned. In March 2018, Murphy purchased a bed and breakfast located on W4232, which was commercially zoned. The family moved into W4232 and began renting W4110, their original summer home. W4177, W4110, and W4106 are all considered to be short-term rental properties subject to the ordinance.

Murphy's short-term rental properties, W4177, W4110, and W4106, all use POWTS which are required to be pumped and examined regularly. Because Murphy's properties are on private systems, the Ordinance limits their occupancy to the lesser of either the POWTS certification or the State Tourist Rooming House License. Since the State Tourist Rooming House License does not limit occupancy, the occupancy limit hinges on the POWTS certification for each property, which is two people per bedroom unless the system is oversized. (Docket #19-6 at 2).

The parties dispute whether Murphy's septic systems are potentially overburdened by their advertised use. For example, the County provides evidence that W4106 has a sanitation permit for 4 people but is advertised as a 12-person occupancy; W4110 has a sanitation permit for four people

but is advertised as a 17-person occupancy; and W4117 has no sanitation permit but is advertised as a 12-person occupancy. Murphy argues that the evidence is inadmissible but does not explain why.[2] In any case, the dispute is immaterial to the Fourth and Fourteenth Amendment challenges at issue, though it illustrates the tensions underlying the lawsuit.

The County sent Murphy a letter on April 30, 2018 informing him of the new ordinance and licensing requirement. Murphy did not respond to the correspondence and did not apply for the County license. Nevertheless, Murphy has not been prohibited from renting his properties as short-term rentals and continues to do so. He has not been cited for violating any provisions of the Ordinance, nor has he suffered any compensatory damages, aside from the costs associated with this litigation.

## 3. ANALYSIS

Murphy challenges the constitutionality of two provisions in the Ordinance. First, he contends that Section 26-342, the guest registry policy, requires an unreasonable search in violation of the Fourth Amendment. Second, he argues that Section 26-336 violates the Equal Protection Clause of the Fourteenth Amendment because it treats single-family homes that rent for less than thirty days differently from long-term rented or owned single-family homes. The County argues that Murphy lacks standing to bring either claim; that his Fourth Amendment claim is moot in light of the County's repeal of the guest registry; and that there is no Equal Protection Clause violation because the Ordinance does not treat like properties differently and, in any case, the Ordinance passes muster under rational

---

[2]As a general matter, the standard for evidence on summary judgment is whether it *could* be presented in an admissible form at trial. Fed. R. Civ. P. 56(c)(2).

basis review. For the reasons explained below, Murphy's constitutional challenges fail.

### 3.1 Standing and Mootness

"Article III standing requires that a plaintiff [establish] three elements: (1) an 'injury in fact'—an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury." *Sierakowski v. Ryan*, 223 F.3d 440, 442–43 (7th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). "[T]he Supreme Court has made clear that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Id.* at 443; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) (stating that standing to request injunctive relief is lacking when only past harm is alleged); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

The County contends that Murphy lacks standing because he has not complied with the Ordinance (and therefore has neither incurred the $904.00 application fee, nor the burdens of compliance), nor has the County enforced the statute against him. The Court finds that Murphy has standing to pursue a pre-enforcement challenge based on his Fourth and Fourteenth Amendment rights in light of the fact that the County will enforce the Ordinance in the future. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

159 (2014); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (noting that "[i]t is well established that 'pre-enforcement challenges. . .are within Article III.'") (quoting *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010)). It is a closer question whether his Fourth Amendment claim is moot in light of the County's repeal of the guest registry requirement.

The standard for determining whether a defendant's voluntary cessation of the challenged conduct moots a case is "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). A good faith amendment to a challenged statute can moot a legal attack. *Thomas v. Fiedler*, 884 F.2d 990, 995 (7th Cir. 1989) (citing 13A Wright, Miller & Cooper, Fed. Prac. & Proc.: Jurisdiction 2d § 3533.6 (1984)). In *Thomas*, the Seventh Circuit vacated a district court's injunction and dismissed the appeal as moot after the state legislature amended a challenged statute. *Id.* Although the plaintiff in that case feared that the legislature would simply re-enact the problematic statute, the Seventh Circuit determined that there was no evidence in the record to support the plaintiff's fear. *Id.* Rather, the amendment meant that there was no case or controversy before the Court. *Id.*

Not all amendments will render a legislative challenge moot, and the burden is on the defendant to demonstrate that there is "no reasonable expectation that the wrong will be repeated." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 290 (1982) (a city's voluntary repeal of a challenged statute did not preclude the court's review where the city had repealed the statute before and

announced an intent to re-enact the statute if the district court's injunction were lifted). However, where the only requested relief is declaratory or injunctive, "repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929–30 (7th Cir. 2003).

There is no evidence from which the Court can infer an intent to reinstate the guest registry provision, nor is there any reasonable expectation that the County would reinstate the guest registry in light of the reasons it was repealed. The County determined the guest registry provision was unnecessary because (1) the State already requires short-term property owners to maintain a guest registry, so the provision was redundant; and (2) the guest provision was not effective in monitoring occupancy, as guests often did not disclose all visitors. In order to address this second point, the County hired an enforcement officer to patrol and investigate over-occupancy. The County has expressed no intent to re-enact the provision, nor is there any reason presented for why it would. Since the constitutionality of the State's statute is not at issue here, the Court will not evaluate it. In light of the fact that there is nothing for the Court to declare or enjoin, it will decline to assess whether the guest registry violates the Fourth Amendment because the issue, at least as to the County, is moot.

### 3.2     30-Day Limit Equal Protection Challenge

The Fourteenth Amendment's Equal Protection Clause "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citations and quotation omitted).

Usually, laws pass muster under the Equal Protection Clause "if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. However, when a statute burdens a person's fundamental constitutional rights, courts apply a higher level of scrutiny. *See Atty. Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 904 (1986).[3] To prove an equal protection claim under rational basis review, Murphy must show: "(1) the [County] intentionally treated him differently from others similarly situated, (2) the [County] intentionally treated him differently because of his membership in the class to which he belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006). An ordinance fails rational basis scrutiny only "if no sound reason for the action can be hypothesized," or if it were "wholly impossible to relate to legitimate governmental objectives." *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) (citations and quotations omitted).

---

[3]Murphy's argument that Ordinance burdens a fundamental right to "residential use" holds no weight. The Supreme Court has yet to find a fundamental right to "residential use" of property. Indeed, it is difficult to see how this is *not* an ordinance that regulates economic activity. Murphy himself characterizes the Ordinance as targeting "the occupants of short-term rental properties versus the occupants of properties that are not short-term rental properties." (Docket #26 at 6). In other words, the class of people the Ordinance targets are *renters of short-term properties* versus *renters and owners of long-term properties or guests at commercial lodging establishments*. The ordinance effectively regulates the short-term rental market; therefore, rational basis review is appropriate. Moreover, generally applicable zoning ordinances have long received rational basis review. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 766–67 (7th Cir. 2003); *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386–88 (1926).

As a threshold matter, the single-family homes used for short-term rentals are not similarly situated as single-family homes used for long-term use. Murphy contends that "the only activity that occurs in. . .detached single-family homes in Walworth County is. . .residential. . .Since every single-family home is used in the identical manner, there is no rational basis for treating one home differently than the others." (Docket #26 at 7). However, in that same paragraph, Murphy acknowledges that "less tha[n] 1% of single-family homes. . .are rented out on a short-term-basis while the other 99% are not." *Id.* Therefore, 1% of the single-family homes are sporadically inhabited by tourists, while 99% of the single-family homes are inhabited by long-term residents of the community. A single-family home that is inhabited throughout the year by an average-sized family is differently situated than a single-family home that is inhabited intermittently by large groups of people—there is a different rate of electricity, plumbing, and gas usage; the number of automobiles in the driveway will vary considerably; the amount of trash that people create on vacation tends to be greater (*e.g.*, due to disposable travel items and pre-packaged food and drink); and the interests that tourists have in preserving the quality of life in a neighborhood tends to be lower because they will soon leave.

Yet even if the Court were to find the properties similarly situated, the Court would be constrained to find that the Ordinance is constitutional under a rational basis review. In this case, the County has provided evidence that residents in the community believed the short-term rental ordinance would curb negative externalities associated with tourist use of residential properties. Murphy seems to believe that the County must supply proof for the premises underlying the Ordinance's rationale—*i.e.*,

evidence that short-term rentals *actually do* erode the sense of community, result in increased drug use, and overload septic systems. That is not the standard. The standard is whether the Court "can reasonably conceive of any justification" based on the evidence provided. *Shaw v. Smith*, 206 F. App'x 546, 548 (7th Cir. 2006).

The Ordinance's stated purpose—to protect the health, safety, and general welfare of the public from seasonal over-occupancy—is an obvious and rational justification for the requirements imposed. (Docket #19-4 at 1). For example, the regulation's septic requirement helps avoid the following hypothetical fallout from over-occupancy: a single-family home is used as a short-term rental and has a POWTS that is technically complaint with pre-existing regulations and would suffer no strain under normal use by a family of four or five. However, one particularly busy summer, the property sees eight weekends in a row of family reunions, work retreats, bachelorette parties, and getaways among friends. Each weekend the property hosts between ten and fifteen guests, which is double or triple the maximum occupancy permitted by the County based on the POWTS capabilities. By the end of the summer, the POWTS is so loaded with bacchanal waste product (which may be anything a short-term renter would hazard to flush) that it erupts. What follows? A very unpleasant chain of events, to say the least, that would detrimentally affect the nearby community. In light of this reasonably conceivable justification for the regulation, the Court must grant the County's motion for summary judgment.

4.  **CONCLUSION**

In light of the foregoing, the Court will grant summary judgment in favor of the County. Murphy has failed to demonstrate a genuine issue of material fact as to either of his constitutional claims.

Accordingly,

**IT IS ORDERED** that Walworth County's motion for summary judgment (Docket #15) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Martin J. Murphy and Stay Lake Geneva, Inc.'s motion for summary judgment (Docket #21) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the parties' joint motion to amend the scheduling order (Docket #39) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge